MBL (USA) CORPORATION and
Mitsuboshi Belting Limited,
Plaintiffs,

v.

The UNITED STATES, Defendant,

and

The Gates Rubber Company,
Intervenor–Defendant.

MBL (USA) CORPORATION and
Mitsuboshi Belting (Singapore)
Pte., Ltd., Plaintiffs,

v.

The UNITED STATES, Defendant,

and

The Gates Rubber Company,
Intervenor–Defendant.

Nos. 89–07–00403, 89–07–00404.

United States Court of
International Trade.

March 14, 1990.

Sonnenberg, Anderson, O'Donnell & Rodriguez, Steven P. Sonnenberg and Michael A. Johnson, for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, M. Martha Ries, George Thompson, Atty., U.S. Intern. Trade Com'n, and Pamela Green, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Jessica Wasserman, for intervenor-defendant.

## MEMORANDUM & ORDER

AQUILINO, Judge:

The plaintiffs commenced the above-encaptioned actions by service and filing of form summonses and of complaints, demanding in each instance

judgment ordering the United States Department of Commerce, International Trade Administration, to amend the Antidumping Duty Order ... so that it releases the bonds or refunds deposits (with interest) given or made on entries or withdrawals from warehouse for con-

sumption of industrial power transmission [V-]belts ... made from February 1, 1989 to June 7, 1989, and states that such entries or withdrawals from warehouse [for consumption] are not liable for the possible assessment of antidumping duties.

The orders for which amendment is sought were published on June 14, 1989 *sub nom. Antidumping Duty Order of Sales at Less Than Fair Value; Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Japan,* 54 Fed. Reg. 25,314, and *Antidumping Duty Order of Sales at Less Than Fair Value; Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Singapore,* 54 Fed.Reg. 25,- 315, and are based on final determinations of the International Trade Administration ("ITA") reported at 54 Fed.Reg. 15,485 (April 18, 1989) and 54 Fed.Reg. 15,489 (April 18, 1989), respectively.

Within 30 days of the filing of the original complaints, the plaintiffs filed amended complaints in each action, adding second counts which seek to contest the affirmative injury determinations of the U.S. International Trade Commission ("ITC")[1] also underlying the foregoing antidumping-duty orders. The defendant and the intervenor-defendant have interposed answers to the amended complaints. In addition, in each action the defendant has filed a "Motion to Dismiss Count II of the Complaint"[2], which amounts to a motion for partial summary judgment within the meaning of CIT Rule 12(c) (rather than 12(b) specified by the defendant) in view of the joinder of issue and the presentment of matters outside the pleadings.

Defendant's counsel argue in support of their motions that the plaintiffs lack standing to contest the ITC's determinations and also that this court lacks subject-matter jurisdiction over the second counts of the amended complaints. The intervenor-defendant supports the first argument.

## I

■ The Trade Agreements Act of 1979, as amended, provides in pertinent part:

(2) Review of determinations on record
(A) In general
Within thirty days after—
(i) the date of publication in the Federal Register of—
... (II) an antidumping or countervailing duty order based upon any determination described in clause (i) of subparagraph (B), ...

an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint, each with the content and in the form, manner, and style prescribed by the rules of that court, contesting any factual findings or legal conclusions upon which the determination is based.[3]

The papers before the court now indicate that the above-named plaintiffs participated in proceedings before the ITA and the ITC as parties respondent. Their counsel filed a notice of appearance with the latter agency stating, among other things, that "[a]ll three corporations ... intend to participate fully in the[ ] investigations and to file briefs and statements with the Commission."[4] Thereafter, however, counsel sent a letter to the ITC as follows:

On instructions from our clients ..., we hereby withdraw their appearance as parties in this investigation. We likewise

---

**1.** *See Industrial Belts from Israel, Italy, Japan, Singapore, South Korea, Taiwan, the United Kingdom, and West Germany,* 54 Fed.Reg. 24,- 430 (June 7, 1989).

**2.** Cited hereinafter as "Defendant's Motions".

**3.** 19 U.S.C. § 1516a(a)(2)(A). The subparagraph (B), clause (i) referred to in this provision makes the final affirmative determinations of the ITA and the ITC herein subject to judicial review, as does the Customs Courts Act of 1980, as amended, 28 U.S.C. § 2631(c).

**4.** Defendant's Motions, Exhibit A and record document ("R. Doc") 133, p. 2. This notice of appearance was filed after notice of the institution of the ITC's final investigations had been published. *See* 54 Fed.Reg. 6,970 (Feb. 15, 1989).

withdraw the notice of appearance at the hearing in this matter filed last week. Our clients will not be filing briefs in this matter, through counsel or otherwise, nor will they or their attorneys or representatives be appearing at the hearing in this matter.

We, as attorneys covered by administrative protective order in this matter, are cognizant of our obligations and those of other attorneys in our firms under such order and will return or destroy, at your instruction and with appropriate certification, all materials made available to us to date or hereafter. We would request that no further confidential material be served on us by the Commission. In addition to serving this notice on all parties by first class mail, we are sending the same this afternoon by telefax to attorneys for parties covered by the Administrative Protective Order in order that they may delete our names from their APO service list.[5]

The Commission reacted accordingly, serving copies of this withdrawal statement on all other parties to the protective order.[6]

The plaintiffs argue now in opposition to defendant's motions that their

letter was intended to inform the ITC that MBL would not be filing briefs in the final ITC investigation or appearing at the hearing. The primary purpose of the letter was to address confidential materials provided to counsel and to prevent further service of them on counsel....

Under 19 CFR 201.11(a), ... a party filing an appearance before the ITC is required to state its intent to file briefs with the ITC regarding the subject matter of the investigation. MBL's appearance expressed such an intent. When it was determined later, however, that MBL would not be filing briefs, it so informed the ITC in the form of a withdrawal. The withdrawal was intended to

be limited to that statement in the appearance. Since counsel for MBL no longer intended to file briefs, they were obligated to refrain from receiving further confidential information.[7]

The court accepts this representation on its face, but the position taken makes the basis of the ITC's present objection obvious.[8] Rather than attempt to aid the agency in final resolution of its investigations, the respondents, now putative plaintiffs herein, withdrew—and at the very moment when input from them by way of written or oral presentations could have been most helpful to the commissioners.

The principle that issues not raised in a forum *nisi prius* cannot be raised on appeal is as old as the term itself and does not require citation of precedents. Another established precedent, of course, is that in deciding a motion to dismiss, the complaint is to be viewed in a light most favorable to the plaintiff. *E.g., Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This court has afforded plaintiffs' second counts in these actions such consideration, but that approach has failed to dim their clear-cut challenge to the final analysis of one of the commissioners in support of the ITC's affirmative determinations. The citation to, and attempted reliance on, *Yuasa–General Battery Corp. v. United States*, 11 CIT 382, 661 F.Supp. 1214 (1987), in paragraphs 25 of the amended complaints, for example, should have been first part of a presentation by the respondents below. In other words, the plaintiffs attempt to focus now on precisely that part of the administrative proceedings which they chose to abandon. Having made this choice, they cannot compel the Commission to respond in this forum beyond its present motions. *Cf. Miller & Company v. United States*, 824 F.2d 961 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

---

5. Defendant's Motions, Exhibit B and R.Doc 215, p. 1.

6. *See* Defendant's Motions, Exhibit C and R.Doc 226. *Cf.* Defendant's Reply memoranda, Exhibit A.

7. Plaintiff's [*sic*] Memorandum in Opposition to Defendant's Motion to Dismiss Count II of the Complaint, pp. 19–20.

8. The offers of oral argument on the instant motions therefore need not be granted.

## II

The relief the original complaints aimed at was amendment of the antidumping-duty orders, the publication of which led to commencement of these actions. In fact, while such publication starts the 30–day period of limitation of 19 U.S.C. § 1516a(a)(2)(A) running within which to commence an action pursuant to 28 U.S.C. § 1581(c), challenging an underlying determination of the ITA or ITC, and the Form 3 summons appended to the Rules of this Court of International Trade for such actions calls at lines 2–4 for a brief description of and citation to the contested determination(s), counsel for the plaintiffs chose to describe and cite the respective orders rather than determinations. Their complaint, served and filed at the same time, did refer to the ITC determinations, but the only relief sought therein, as quoted above, was from the ITA. *Cf.* CIT Rule 8(a) ("A pleading ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief, and ... a demand for judgment for the relief the pleader seeks").

■ To the extent the plaintiffs are genuinely complaining of the antidumping-duty orders, the defendant claims that subject-matter jurisdiction is lacking. There is merit in the position that jurisdiction cannot be based on 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c) in view of the precise language of those statutes, although the court is not persuaded that it would not have jurisdiction if those orders are the subject matter. *Compare, e.g., Smith Corona Group, SCM Corp. v. United States,* 8 CIT 100, 102–05, 593 F.Supp. 415, 417–20 (1984), *with Smith Corona Corp. v. United States,* 11 CIT 954, 957–58, 678 F.Supp. 285, 287–88 (1987), *and* 19 U.S.C. § 1516a(a)(2)(B)(vi). While the actions at

bar are not within the ambit of this latter case and the statutory section, which was added by the Trade and Tariff Act of 1984, Pub.L. No. 98–573, 98 Stat. 3040, it was settled by the former case that 28 U.S.C. § 1581(i) is ground for jurisdiction, which the defendant in essence concedes.[9]

■ The fact that subject-matter jurisdiction exists, whether based on 28 U.S.C. § 1581(c) or (i), does not obviate the question, however, of whether it covers plaintiffs' attempted challenges of the ITC determinations. The court concludes that it does not. The antidumping-duty orders were published on June 14, 1989. Plaintiffs' second counts and prayers for relief against the Commission [10] were served and filed on August 4, 1989 for the first time, or beyond the time allowed to invoke judicial review. That is, plaintiffs' summonses and original complaints did not stop the running of the 30–day statutory period as against the ITC. As the court of appeals stated in *Georgetown Steel Corporation v. United States,* 801 F.2d 1308, 1312 (Fed. Cir.1986):

Since section 1516a(a)(2)(A) specifies the terms and conditions upon which the United States has waived its sovereign immunity in consenting to be sued in the Court of International Trade, those limitations must be strictly observed and are not subject to implied exceptions. *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). If a litigant fails to comply with the terms upon which the United States has consented to be sued, the court has no "jurisdiction to entertain the suit." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607, [1980] (quoting *United States v. Sher-*

9. *See* Defendant's Motions, p. 8, n. 2 ("plaintiffs should have sought review of the Commerce order pursuant to 28 U.S.C. § 1581(i)").

10. Plaintiffs' demands for relief in the original complaints, *supra,* were amended to also pray for
judgment holding that the affirmative determination of the International Trade Commission is contrary to law in that it is based, in part, upon a finding of threat of material

injury which is not based upon substantial evidence, is arbitrary and capricious and is contray [*sic*] to law; remanding this matter to the United States International Trade Commission for reconsideration of the basis for finding threat of material injury to the United States industries producing V–Belts, synchronous belts, and all other belts,
to quote, for example, from the pleading in action No. 89–07–00403.

*wood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)).

In conclusion, and by way of comparison, to the extent the plaintiffs are complaining of the ITA determinations, their summonses, followed by timely filing of the complaints, did effectuate a halt in the running of the statutory time against those determinations, but that halt cannot be stretched to encompass the ITC.

\* \* \*

Now, therefore, in view of the foregoing, it is

ORDERED that defendant's motions for partial summary judgment dismissing the second counts of the amended complaints in the above actions be, and they hereby are, granted; and it is further hereby

ORDERED that the plaintiffs in the above actions shall have 60 days from the date hereof to serve and file motions dispositive of the remaining, first counts of the amended complaints so long as those motions are not based on claims arising out of the proceedings before the International Trade Commission; and it is further hereby

ORDERED that the defendant and the intervenor-defendant have 30 days from the date of service and filing of dispositive motions on the part of the plaintiffs to respond thereto, with the plaintiffs then entitled to ten days to serve any replies.